**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SOLEDAD NUNEZ, ) | CASE NO. ED CV 08-00923 (RZ) |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| vs. ) | AND ORDER |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

    The Administrative Law Judge concluded that Plaintiff Maria Soledad Nunez, who had suffered an industrial injury previously, did not have a severe impairment, and therefore did not qualify for disability payments. The regulations do not define a "severe" impairment. Instead, they state what a *non*-severe impairment is: one that does not significantly limit physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The basic work activities are "the abilities and aptitudes necessary to do most jobs," including various physical and mental activities. *Id.* The requirement of having a severe impairment performs a gatekeeping function, screening out frivolous complaints. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic work functions. SSR 85-28. This minimalist treatment has received the Courts' imprimatur. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th

Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all — it simply must have more than a minimal effect on his or her ability to do basic work functions. When the Commissioner rests his decision on the failure to satisfy the severity requirement, that decision, as with any other, must rest on substantial evidence within the record. *Smolen v. Chater, supra,* 80 F.3d at 1289-90.

The Administrative Law Judge found that Plaintiff had medically determinable impairments, consisting of degenerative disc disease of the cervical spine and spondylosis, lumbar strain and sprain, which was resolved, and cervical disc herniation with radiculitis. [AR 16] To support her decision that these impairments were not severe, the Administrative Law Judge discussed the reports of two doctors. Dr. Simpkins, an agreed-upon medical examiner in Worker's Compensation proceedings, examined Plaintiff. While he diagnosed Plaintiff as having, in part "multiple levels of degenerative disc disease and spondylosis, cervical spine," [AR 252] he also stated that "[m]y clinical examination of her cervical spine and bilateral upper extremities is negative." [AR 253] Dr. Simpkin also diagnosed Plaintiff as having a "lumbar sprain/strain," [AR 252], but similarly found little consequence: "[m]y clinical examination of the lumbar spine reveals very little in the way of findings." [AR 253] As a prophylactic measure for her lumbar spine, he imposed a limitation on "very heavy lifting." [AR 255]

The Administrative Law Judge gave this opinion little weight, because it was rendered within 10 months of the injury. [AR 20] The Administrative Law Judge relied more heavily on the opinion of the consulting physician, Dr. Dorsey, who examined Plaintiff in December 2006, well after the injury in early 2005. Dr. Dorsey stated that the lumbar and cervical spinal problems had been resolved, and that the left upper and lower extremity pain were based on subjective symptoms only. [AR 19, citing AR 174] He also stated his belief that Plaintiff had no impairment-related symptoms. [*Id.*] This was also

the view of the various state agency physicians who reviewed the records. [AR 120-36, cited by the Administrative Law Judge, AR 20]

It was not, however, the view of Plaintiff's treating physician, Dr. Ahmed. On March 14, 2005, Dr. Ahmed stated that Plaintiff could work for a total of up to two or three hours [AR 238]. During his treatment, Dr. Ahmed recommended cervical epidural injections to relieve the pain caused by the problems with the cervical spine, and apparently could not, at least for some extended period of time, get the insurance company to authorize the injections. Thus, even though Dr. Ahmed recommended the injections as early as July 2005 [AR 218], in May 2006, he was still requesting authorization from the insurance company. [AR 186] At that point, however, Dr. Ahmed stated that Plaintiff's symptomatology was increasing with respect to her cervical spinal issues; the requested injections, however, in his opinion would make Plaintiff a strong candidate for return to the workforce. [AR 187]

The Administrative Law Judge referred to the opinion of Dr. Ahmed, but gave it weight "only to the extent that it is consistent with the record and shows that the claimant had limitations at one point, but no longer has limitations stemming from any severe impairments." [AR 20] The records from Dr. Ahmed, however, show an impairment, continuing for more than twelve months, which clearly more than minimally affected Plaintiff's ability to perform basic work functions. To give Dr. Ahmed's opinions such short shrift required more attention than the Administrative Law Judge accorded them. The opinion of a treating physician is given greater weight than the opinion of other physicians, *Aukland v. Massanari*, 257 F.3d 1033, 1036 (9th Cir. 2001), and the Administrative Law Judge can reject it only if he gives specific and legitimate reasons for doing so, which in turn are backed by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The Administrative Law Judge therefore erred in rejecting the opinion of Dr. Ahmed. Had that opinion been credited, the Administrative Law Judge then would

have proceeded through the remainder of the sequential evaluation. Accordingly, the action must be remanded for that purpose.

The Court's decision makes it unnecessary to assess Plaintiff's arguments that the Administrative Law Judge did not properly assess Plaintiff's own testimony, or develop the record concerning a potential mental impairment. Since the Commissioner will have this matter before him again, the officer hearing the matter may wish to revisit these issues as well.

The Commissioner's decision is reversed, and the matter is remanded for proceedings consistent with this Memorandum Opinion.

DATED: March 23, 2009

_/s/ Ralph Zarefsky_
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE